23381

Naomi SANDERS, Respondent v. Atlee PRINCE and Sumter County
School District Number 2, Defendants, of whom Atlee Prince is Appel-
lant. and Tommy DABBS, Respondent v. Atlee PRINCE and Sumter
County School District Number 2, Defendants, of whom Atlee Prince is
Appellant.

(403 S.E. (2d) 640)

Supreme Court

*William H. Davidson, II,* and *David L. Morrison,* both of
*Nauful & Ellis, P.A.,* Columbia, and *Randall M. Chastain,*
Columbia, *for appellant.*

*J. Edward Bell, III,* of *Bell & Bagley,* Sumter, *for respon-
dents.*

Heard Dec. 13, 1990.

Decided April 8, 1991.

Harwell, Justice:

This case arises out of the defamation of two Sumter County School Board members by appellant Atlee Prince. We find that the jury's verdict was excessive and thus, reverse.

## I. FACTS

Appellant[1] Atlee Prince (Prince) and respondents Naomi Sanders (Sanders) and Tommy Dabbs (Dabbs) were members of the Sumter County School Board (School Board). Sanders was the Chairman of the School Board and the immediate past Vice-Chairman, Prince was Vice-Chairman and Chairman of the School Board's Finance Committee, and Dabbs was the immediate past Chairman. Prince was elected as a member of the School Board when Dabbs was Chairman. Prince wanted to be Chairman. Prince claims he agreed to nominate and support Sanders to succeed Dabbs as Chairman with the understanding that Prince would serve as Vice-Chairman, but would be chosen as Chairman at the next election. However, at the next election, Sanders opposed Prince and Sanders was reelected.

Prince claims that his initial campaign for the School Board position arose out of his concerns about possible financial mismanagement in the School District. Due to his concerns, and his desire to investigate the allegations of financial impropriety, Prince established the School Board's Standing Committee on Finance. Prince was elected Chairman of the Committee. In this position, he attempted to investigate the financial structure of the School District. Prince claims that he discovered that the School District lacked a viable internal control system, thus making it impossible to track the thirty million dollars that flowed through the School District every year. This discovery led Prince to urge the School Board to hire an auditing firm to do a special audit. However, Prince claims that certain School Board members attempted to impede the special audit.

With his election as Chairman of the School Board blocked by Sanders and his efforts to obtain an audit thwarted, Prince asserts that he believed that his only recourse was to inform

---

[1] Sumter County School District Number 2 (School District) was initially a defendant, but obtained a directed verdict at the close of respondents' case.

the public of his concerns, in the hope that the public would put pressure on the School Board to investigate the financial status of the School District. Thus, on July 7, 1987, Prince held a news conference at the District Administration Office. Prince stated that the purpose of the news conference was to attract public attention to "an apparent pattern of malfeasance, fraud, mismanagement [of district funds], illegal bid-solicitation practices, kickbacks, and bribery" within the Dabbs/Sanders administration.

As a result of Prince's statements at the press conference, Sanders and Dabbs initiated separate actions against Prince, in both his individual and official capacities, for defamation, conspiracy, and republication of defamatory remarks. The actions were consolidated for trial. On the motion of Prince, the School District was added as a defendant. However, during the trial, the trial judge directed a verdict in favor of the School District based on his determination that the School District could not be liable under the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 to 15-78-190 (Supp. 1989).

The trial judge submitted the case to the jury solely on the issues of whether the remarks were made with actual malice and whether these remarks resulted in damage to Sanders' and Dabbs' reputations. The jury returned a verdict in favor of each plaintiff in the sum of $1,250,000.00 in actual damages and $750,000.00 in punitive damages. The trial judge denied Prince's post-trial motions for judgment notwithstanding the verdict and a new trial. This appeal follows.

## II. DISCUSSION

Prince argues that the trial judge erred in not setting aside the verdict and in not granting his motion for a new trial on the ground that the verdict was excessive. We agree. When a verdict is "grossly excessive and the amount awarded is so shockingly disproportionate to the injuries as to indicate that the jury acted out of passion, caprice, prejudice, or other considerations not founded on the evidence, it becomes the duty of this Court, as well as the trial court, to set aside the verdict." *Small v. Springs Industries, Inc.*, 292 S.C. 481, 487, 357 S.E. (2d) 452, 455 (1987).

The conduct of the jury, as well as the amount of the award, lead us to the conclusion that the jury's verdict was based on

passion, caprice, and prejudice, rather than on the evidence presented at trial. Shortly after the jurors commenced their deliberations, they sent a question to the trial judge: "Can we force Mr. Prince to resign from the School Board?" Although the trial judge properly responded to the question, this attempt by the jurors to exceed the authority granted them by the trial judge's instructions is evidence of the fact that the jury was motivated by passion, caprice, and prejudice. Further, while there was evidence that Sanders' and Dabbs' reputations were damaged, there was also evidence that subsequent to the defamation, Sanders was reelected to her School Board position and was elected Secretary of Sumter County Democratic Party. Neither Sanders' nor Dabbs' reputation was damaged to the extent that a multi-million dollar award of damages was warranted.

Based on the foregoing, we find that the verdict was arbitrary and capricious, and so grossly excessive as to indicate passion, prejudice, or other improper motive. As a result, Prince is entitled to a new trial. Furthermore, we find that a new trial on all issues is necessary in this case because the questions of liability and damages are inextricably intertwined. Sanders and Dabbs seek punitive damages from Prince. The measurement of these damages necessarily depends on the jury's view of the facts giving rise to liability; it requires the jury to assess the quality of the acts creating liability and the degree to which those acts are culpable. Thus, in fairness to all parties, we believe that these issues should be tried together before the same fact-finder. For these reasons, we reverse and remand for a new trial on all issues.

Since we are granting a new trial, we feel that it is necessary to clarify two issues which were raised on appeal and which will inevitably arise at the next trial. First, the trial judge's instructions on the definition of actual malice were erroneous because they included the definition of common law malice. In cases involving the defamation of a public official, the plaintiff must prove that the defendant acted with constitutional actual malice, that is, with knowledge that the statement was false or with reckless disregard of its falsity. *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 84 S. Ct. 710, 726, 11 L. Ed. (2d) 686, 706 (1964). "Instructions [on common law malice], which permit the jury to im-

pose liability on the basis of the defendant's hatred, spite, ill will, or desire to injure are clearly impermissible." *Old Dominion Branch No. 496 v. Austin,* 418 U.S. 264, 281, 94 S. Ct. 2770, 2780, 41 L. Ed. (2d) 745, 760 (1974). "Ill will toward the plaintiff, or bad motives, are not elements of the *New York Times* standard." *Id.* Since the parties agreed to the charges given at the trial, we do not reverse on this basis. However, in order to facilitate the retrial of this case, we note that the trial judge must instruct the jury on constitutional actual malice as enunciated in *New York Times,* and must not instruct the jury on common law malice.

Second, when the trial judge directed a verdict in favor of the School District, he should have also directed a verdict for Prince in his official capacity; once the School District was released from the case, Prince was no longer capable of being sued in his official capacity and could only be sued in his individual capacity. In addition, contrary to Prince's assertions, the clear language of the South Carolina Tort Claims Act (Act) provides that Prince may be sued individually. S.C. Code Ann. § 15-78-70(a) and (b) (Supp. 1989), provide that the Act is not the exclusive remedy for a tort committed by a government employee who acts with actual malice; subsection (b) unequivocally states that when the employee's conduct constitutes actual malice, he is not entitled to immunity from suit and liability. Finally, since these subsections expressly authorize a recovery against Prince apart from the limitations imposed by the Act, the monetary limits on recovery contained in the Act are inapplicable.

Reversed and remanded.

GREGORY, C.J., and CHANDLER and TOAL, JJ., BRUCE LITTLEJOHN, Acting Associate Justice, concur.