23870

Thomas G. BOTCHIE, Appellant v. Michael O'DOWD, The Sheriff of Charleston County, and the Retirement Division of the State of South Carolina Budget and Control Board, Respondents.

(432 S.E. (2d) 458)

Supreme Court

*Gregg Meyers* of *Wise & Cole, P.A.*, Charleston, *for appellant.*

*Thomas S. Tisdale, Jr., Stephen P. Groves* and *J. Matthew Dillon,* of *Young, Clements, Rivers and Tisdale,* Charleston, *for respondents.*

Heard May 5, 1993.

Decided June 7, 1993.

CHANDLER, Justice:

Thomas Botchie (Botchie)[1] appeals the grant of a directed verdict against him on causes of action for breach of implied contract, defamation, and violation of his Constitutional right of free speech.[2]

We affirm in part, reverse in part and remand.[3]

---

[1]We previously reversed a grant of summary judgment against Botchie arising out of the same matter. *See Botchie v. O'Dowd*, 299 S.C. 329, 384 S.E. (2d) 727 (1989) (*Botchie I*).

[2]U.S. Const. amend. I; S.C. Const. art. I, § 2.

[3]Circuit Court also directed a verdict on Botchie's cause of action for Retaliatory Discharge, finding that, absent a constitutional violation, there could be no claim for retaliatory discharge. In light of its holding, Circuit Court did not address whether violation of constitutional rights is within the ambit of "pubic policy" exceptions prerequisite to a retaliatory discharge claim. *See Ludwick v. This Minute of South Carolina, Inc.*, 287 S.C. 219, 337 S.E. (2d) 213 (1985). Accordingly, the issue is one for determination upon remand.

## FACTS

In February, 1986, Botchie was appointed "Undersheriff"[4] of Charleston County by Sheriff Charles Dawley. When Sheriff Dawley died in October, 1987, Botchie, then second in command, discussed with two Republican State Senators his interest in appointment as Interim Sheriff. According to Botchie, he was informed by the Senators "that the legislators had nothing whatsoever to do with the appointment of the Interim Sheriff; that was strictly a function of the Governor." On November 6, 1987, the Governor appointed Respondent, Michael O'Dowd (O'Dowd), as Interim Sheriff, which appointment Botchie alleged was supported by the Senators.

Subsequent to the appointment, Botchie spoke with a longtime friend concerning his conversations with the Senators. Botchie informed his friend that the experience had left him distrustful of Republicans and that he wanted nothing to do with the Republican Party.

When Botchie returned from a 10-day vacation on December 2, 1987, he was immediately fired by Sheriff O'Dowd. According to Botchie, ". . . he told me that I was being terminated because I had made derogatory statements about the Republican Party and some Senators, and later on in the conversation he said that is undermining my position as Sheriff."

Thereafter, O'Dowd issued a statement, published to the media, that Botchie was fired because he was "unable to accept the role reversal. . . ."[5] The statement continued:

> I received reliable information from both within and outside of my department concerning statements Mr. Botchie was making relating to my fitness to serve as sheriff, as well as his intentions to actively support my opponent in order to assure my removal from office. . . . This kind of disloyalty from the undersheriff was damaging me personally and was having a demoralizing effect on my department.
>
> The function of the undersheriff is to act as the right-hand man for the sheriff. The course Mr. Botchie chose to

---

[4]"Undersheriff" and "Deputy Sheriff" are essentially synonymous positions. *Botchie I*, 299 S.C. at 330, 384 S.E. (2d) at 728.

[5]Botchie had previously been O'Dowd's superior and, on two occasions, had suspended O'Dowd for abusing sick leave.

take as a result of his disappointment at not being made sheriff is what led to his termination. . . .

The article concluded that "with Botchie's extensive training and background, he will find a useful position to serve in our community."

Thereafter, Botchie instituted this action. At trial, at the close of Botchie's evidence, O'Dowd was granted a directed verdict on all causes of action.

## ISSUE

Did the court err in directing a verdict on the causes of action for (1) Implied Contract, (2) Defamation and (3) Violation of First Amendment rights?

## SCOPE OF REVIEW

"On review of an order granting a directed verdict, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party against whom the verdict was directed. A jury issue exists where the evidence is susceptible of more than one reasonable inference." *Jones v. Ridgely Communications, Inc.*, 304 S.C. 452, 454, 405 S.E. (2d) 402 (1991).

## DISCUSSION

### I. *IMPLIED CONTRACT*

Botchie contends that Sheriff Dawley, by adopting certain procedures and performing routine evaluations, effectively altered his at-will employment status,[6] such that directed verdict should not have been granted on his action for breach of implied contract. We disagree.

A deputy serves at the sheriff's pleasure. S.C. Code Ann. § 23-13-10 (1989). *Heath v. County of Aiken*, 295 S.C. 416, 368 S.E. (2d) 904 (1988). We agree with the Fourth Circuit Court of Appeals that a sheriff may *not* compromise his statutory authority to discharge deputies at his discretion. *Jenkins v. Weatherholtz*, 909 F. (2d) 105 (4th Cir. 1990). To hold otherwise renders the language of § 23-13-10 meaningless and eviscerates the sheriff's ability to discharge deputies at his "pleasure." Accordingly, we hold that Botchie

---

[6]*See Small v. Springs Industries*, 292 S.C. 481, 357 S.E. (2d) 452 (1987).

had no protectible property interest in continued employment with the Sheriff's Department. Directed verdict was properly granted.

## II. *DEFAMATION*

Botchie alleges O'Dowd's statement, printed in the newspaper, was defamatory. Circuit Court found otherwise on the grounds that the statement was (a) truthful and (b) was not made with malice. We need not determine the truthfulness of the statement as we find in the record no evidence that it was made with malice.

"[A] public figure plaintiff[7] suing for defamation must prove, by clear and convincing evidence, that the defamatory falsehood was made with knowledge of its falsity or reckless disregard for the truth." *Holtzscheiter v. Thomson Newspapers*, 306 S.C. 297, —, 411 S.E. (2d) 664, 667 (1991) (Justice Toal dissenting). As noted by Professors Hubbard and Felix:

> [It is] clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the *defendant in fact entertained serious doubts* as to the truth of his publication.

Hubbard and Felix, *The South Carolina Law of Torts* (1990) (Emphasis in original).

Here, Botchie failed to sustain his burden of demonstrating that the statement was made with reckless disregard for its truth. To the contrary, he testified as follows:

Q. All right. Mr. Botchie, my understanding is the reason that Sheriff O'Dowd told you he was going to terminate you is because you were in effect undermining him in the Sheriff's Office, is that right?

A. The understanding that I had, Sheriff O'Dowd told me that I had said some things about the Republican Party and in particular two of the legislators.

Q. Well, in fact, he said that you were trying to undermine him, isn't that right, with the Republican Party?

A. He said I—after he told me that I was saying deroga-

---

[7]The parties do not dispute Botchie's status as a public figure.

tory statements about it, he said that was undermining his political career as Sheriff.

Although O'Dowd may have been mistaken in his beliefs, there is simply no evidence that the statement was uttered with malice. Directed verdict was properly granted.

## III. *FIRST AMENDMENT*

The United States Supreme Court has established a two-prong test for determining whether the discharge of a public employee for speech activity violates the First Amendment:

(1) Does the speech implicate a matter of public concern?
(2) If so, does Employer's interest in the effective and efficient fulfillment of its responsibilities to the public outweigh Employee's interest in free speech?

*Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed. (2d) 708, 717 (1983). Whether the speech addresses a matter of public concern is a question of law, to be determined from the content, form and context of the statement, as revealed by the whole record. *Id.* 461 U.S. at 147-148, 103 S.Ct. at 1690-91, 75 L.Ed. (2d) at 720. An employer's burden of justifying a particular discharge varies depending upon the nature of the employee's expression. *Id.* 461 U.S. at 150, 103 S.Ct. at 1691, 75 L.Ed. (2d) at 722. To the extent a public employee's expression is in furtherance of matters of personal concern, the employer's burden is lessened. *Joyner v. Lancaster,* 815 F. (2d) 20, 24 (4th Cir. 1987). A stronger showing may be necessary where the employee's speech more substantially involves matters of public concern. *Connick,* 461 U.S. at 152, 103 S.Ct. at 1692, 75 L.Ed. (2d) at 723.

Trial Court ruled that Botchie's speech regarding Republicans, being both of public concern and of personal concern to Botchie, was entitled to limited First Amendment protection. However, the Court concluded that Sheriff O'Dowd's interests in maintaining an orderly administration outweighed Botchie's free speech rights.

We agree with the Trial Court's ruling on limited First Amendment protection. We disagree, however, with its further ruling that Sheriff O'Dowd's interests outweighed Botchie's free speech rights.

Here, the only evidence presented was testimony of Botchie himself, and the deposition of a deceased deputy, Melvin Simmons. Directed verdict having been granted at the close of Botchie's case, no evidence was offered by O'Dowd to demonstrate that Botchie's speech had a "detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impede[d] the performance of the speaker's duties or interfere[d] with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed. (2d) 315, 327 (1987).

While it was not necessary that O'Dowd "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships [was] manifest. . . ." *Connick*, 461 U.S. at 152, 103 S.Ct. at 1692, 75 L.Ed. (2d) at 723, *some* showing of actual disruption of disloyalty was required. This record contains no such showing whatsoever and, accordingly, direction of verdict was in error.

The Order below is

Affirmed in part, reversed in part, and remanded for a new trial.

HARWELL, C.J., and FINNEY, TOAL and MOORE, JJ., concur.