511 S.E.2d 383

**Wayne ELDER, Respondent,**

**v.**

**The GAFFNEY LEDGER, INC., Appellant.**

**No. 2921.**

Court of Appeals of South Carolina.

Heard Nov. 5, 1998.

Decided Jan. 4, 1999.

Rehearing Denied March 27, 1999.

652

Jay Bender and Charles E. Baker, both of Baker, Barwick, Ravenel & Bender, of Columbia, for appellant.

Patrick E. Knie, of Knie, White & Anthony, of Spartanburg; and Kenneth L. Holland, of Gaffney, for respondent.

HEARN, Judge:

Wayne Elder, the former Chief of Police for the Town of Blacksburg, brought this action for libel against The Gaffney Ledger, Inc. (Publisher), which publishes *The Gaffney Ledger.* The jury awarded Elder $10,000 in actual damages and $300,000 in punitive damages. Publisher appeals, challenging (1) the denial of its motions for directed verdict and judgment notwithstanding the verdict, (2) the admission of certain testimony from Elder's wife, and (3) the denial of its motion for a new trial based upon the size of the punitive damage award. We affirm.

## FACTS

On May 17, 1995, *The Gaffney Ledger* printed the following in its "What's Your Beef?" column:

> Are the drug dealers paying?
>
> I'd like to know what the people think about this. The Chief of the Blacksburg Police Department knows that these people are selling drugs and they have been selling them many years and he hasn't done anything about it. Now I often wonder if the drug dealers are paying the Chief of Blacksburg. And too, I would like to know why the Gaffney police have to go over there and work in the police department and do their work because they work here in Cherokee County. Don't they have enough money over there to hire Blacksburg police to do their jobs?

According to Cody Sossamon (Editor), the executive editor of the newspaper, the "What's Your Beef" column is a forum whereby members of the public, who may remain anonymous, can express their opinions by placing telephone calls into a computer answering machine. The calls are transcribed, and Editor decides which calls to publish. The column appears on the opinion page of the paper.

Elder testified he saw the May 17, 1995, column and contacted Editor to try to find out who was responsible for the allegations. Editor advised Elder the tape of the telephone call had been erased and the identity of the caller was unknown. Thereafter, Editor wrote Elder a letter extending an opportunity to him to respond to the allegations, but Elder declined to do so. Elder brought this defamation action, alleging the column and headline implied he was taking bribes from drug dealers.

Janice Durham–Baynes, a former crime reporter for *The Gaffney Ledger* from August 1990 to June 1994, testified she was expected to verify information used in news articles. She stated she would not have written a news article based solely on an anonymous phone call.

Several current or former law enforcement officials testified on behalf of Elder. They stated Elder was aggressive in his efforts toward drug enforcement and that there was no indication he was taking bribes from drug dealers. The Administrator for the Town of Blacksburg testified she was aware of Elder's efforts to secure grants to upgrade drug-related law enforcement in the town. In her opinion, Elder was aggressive in his efforts toward drug enforcement.

Editor testified he wrote the headline for the "What's Your Beef" column about Elder, but denied he intended to suggest an answer to the question. Editor further testified he had personal information that led him to believe Elder knew certain people were selling drugs in Blacksburg. In 1991, Elder had advised Editor that a newspaper employee was "hanging out" with a known drug dealer who the police were in the process of trying to bust. Because Elder had tipped him off about his employee, Editor wondered if Elder could have tipped anyone else off. Editor testified he sometimes personally wondered if drug dealers were paying Elder. However, Editor admitted he did not have sufficient information to develop a news story to report that Elder was being bribed.

On direct examination, Editor admitted he was arrested in 1991 for manufacturing marijuana. He pled guilty and served his sentence. He denied that incident had anything to do with his decision to publish the "What's Your Beef" column. He stated he published the material in the column because he believes every citizen has the right to question and comment on the conduct and performance of public officials. On cross-examination, Editor admitted he did not contact any of his reporters to see if they knew anything about Elder before he decided to print the column.

## DISCUSSION

### I.

On appeal, Publisher first argues the trial judge erred in denying its motions for directed verdict and J.N.O.V. because (1) there was insufficient evidence that a false and defamatory statement of fact was published about Elder and (2) there was no clear and convincing evidence that the publication was made with constitutional actual malice. We disagree.

A libel action by a public official against a newspaper publisher implicates the constitutional guarantees of freedom of speech and press. In such actions, "the traditional burdens of proof are altered by the constitutional protections afforded the press." *Beckham v. The Sun News*, 289 S.C. 28, 30, 344 S.E.2d 603, 604 (1986). Public officials must establish that the

defamatory statement was false and that the defamatory statement was made with constitutional actual malice, *i.e.*, with knowledge of its falsity or reckless disregard for its truth or falsity. *Peeler v. Spartan Radiocasting Inc.*, 324 S.C. 261, 265, 478 S.E.2d 282, 284 (1996); *Beckham*, 289 S.C. at 30, 344 S.E.2d at 604. The statement's falsity must be proved by a preponderance of the evidence. *See* F. Patrick Hubbard & Robert L. Felix, The South Carolina Law of Torts 494 n. 191 and accompanying text (2d ed.1997). Proof of constitutional actual malice must be clear and convincing. *Miller v. City of West Columbia*, 322 S.C. 224, 228, 471 S.E.2d 683, 685 (1996) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

We must review the record *de novo* to determine if there is clear and convincing evidence of constitutional actual malice. *Peeler*, 324 S.C. at 265, 478 S.E.2d at 284. However, we need not conduct an independent *de novo* review on the issue of falsity. *Id.;* Hubbard & Felix, *supra*, at 498. Further, in reviewing the denial of directed verdict and J.N.O.V. motions, we accept the evidence in the light most favorable to the non-moving party, including the reasonable inferences deducible therefrom. *Strange v. South Carolina Dep't of Highways & Public Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994); *Stevens v. Sun Publ'g Co.*, 270 S.C. 65, 70, 240 S.E.2d 812, 814–15 (1978).

First, the statement must be defamatory. Publisher argues the headline, "Are the drug dealers paying?," is a pure question which cannot fairly or reasonably be construed as making an accusation of bribery. It also asserts there is no reasonable basis to conclude wrongdoing by Publisher from the anonymous caller's statement, "Now I often wonder if the drug dealers are paying the Chief of Blacksburg."[1] We disagree.

---

1. Although Counsel for Publisher at oral argument attempted to distinguish the column's "Now I often wonder" language as a protected inquiry concerning a public official, there is no meaningful distinction between that language and terms such as "I think" or "in my opinion," which have been held not to afford protection to otherwise defamatory statements. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

A defamatory statement tends to impeach the plaintiff's reputation. *White v. Wilkerson*, 328 S.C. 179, 183, 493 S.E.2d 345, 347 (1997). Defamation need not be direct because a mere insinuation that is false and malicious is actionable if its meaning is plain. *Eubanks v. Smith*, 292 S.C. 57, 63, 354 S.E.2d 898, 901 (1987); *Richardson v. State–Record Co.*, 330 S.C. 562, 565, 499 S.E.2d 822, 824 (Ct.App.1998). Further, "defamatory meaning may be conveyed by means of a question. However, to be defamatory, a question must be reasonably read as an assertion of a false fact; inquiry itself, however embarrassing or unpleasant to its subject, is not accusation." 50 Am.Jur.2d *Libel and Slander* § 156 (1995) (citations omitted); *see Williamson v. Askin & Marine Co.*, 138 S.C. 47, 53, 136 S.E. 21, 23 (1926) (" '[T]o render words defamatory and actionable, ... they [may] make a defamatory charge ... indirectly,· ... by expression of belief or opinion, by insinuation, [or] by mere questions[;] ... and it is not less actionable because made indirectly.' " (quoting 36 C.J. *Libel and Slander* § 20, at 1153–54 (1924) (citations omitted))).

The South Carolina Supreme Court addressed an allegedly defamatory question in *Drakeford v. Dixie Home Stores*, 233 S.C. 519, 105 S.E.2d 711 (1958). In *Drakeford,* a woman had entered a store with a small jar of coffee. She bought several items and was stopped by a store manager who saw the coffee in her open handbag. The manager asked her, "Have you paid for that coffee you have got in your bag?" The customer sued for slander, but the court sustained a demurrer, finding that the question did not affirmatively or impliedly charge her with larceny. *Id.* at 526, 105 S.E.2d at 715.

We find *Drakeford* distinguishable because the statements in this case go beyond a mere inquiry and may reasonably be construed to imply Elder is guilty of bribery. The headline question implies an affirmative answer when read in conjunction with the text of the column. Therefore, we hold there is sufficient evidence of a factual assertion by insinuation that Elder was involved in bribery.

Second, the statement must be false. We find Elder carried his burden of proving the defamatory statement's falsity. Elder presented substantial direct evidence to demonstrate the falsity of the statement. Thus, the record amply

supports the finding implicit in the jury's verdict that the defamatory statement was false.

Finally, the statement must have been made with constitutional actual malice. Publisher argues Elder did not establish constitutional actual malice because there was no evidence Editor had any subjective knowledge of the falsity or had serious doubts about the truth of the information. Editor testified he did not intend to imply an affirmative answer to the question in the headline. He also relies heavily on the prior telephone conversation where Elder told Editor to advise another newspaper employee to stay away from a known drug dealer the police were preparing to bust. Editor claims this led him to believe the information in the column could be true.

The United States Supreme Court has adopted a subjective standard for constitutional actual malice testing a publisher's good faith belief in the truth of an allegedly defamatory statement:

[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant *in fact entertained serious doubts as to the truth of his publication.* Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates [constitutional] actual malice.

*St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) (emphasis added); *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 667, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) ("[T]he defendant must have made the false publication with a 'high degree of awareness of . . . probable falsity' or must have 'entertained serious doubts as to the truth of his publication.'" (internal citations omitted)); *Peeler v. Spartan Radiocasting Inc.,* 324 S.C. 261, 266, 478 S.E.2d 282, 284, (1996) ("Actual malice is a subjective standard testing the publisher's good faith belief in the truth of [the] defamatory statements.").

For constitutional actual malice, a plaintiff must be entitled to prove the defendant's state of mind through circumstantial evidence, including such factors as departure from

professional standards or motive. While courts should not place too much reliance on such factors, "it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." *Harte-Hanks*, 491 U.S. at 668, 109 S.Ct. 2678. Without objection, the trial judge in this case charged the jury that to establish reckless disregard by Publisher, there must be an extreme departure from the standards of investigating and reporting ordinarily adhered to by responsible publishers. Further, he charged recklessness may be found where there are obvious reasons to doubt the veracity of an informant or the accuracy of an informant's reports.

The evidence established that Editor may have been motivated to discredit Elder because of Editor's own problems with law enforcement. The jury could well have believed that Editor's own arrest and guilty plea to marijuana charges prompted him to print the article about Elder. Moreover, because the tape of the call was never introduced into evidence, its authenticity was in question. Although counsel for Publisher contended at oral argument that the same legal standard of Editor's subjective belief applied even if the tape were fabricated, we believe the mere possibility that Editor manufactured the entire piece was probative on the issue of malice.

Additionally, we find that Editor's actions in publishing this column based upon an anonymous call departed from professional standards. Editor conceded he did nothing to verify the story before printing the column. He admitted he did not have sufficient information to develop a news story to report that Elder was being bribed. Editor's personal doubts about Elder's ethics were based solely on the prior telephone call he received from Elder wherein he was warned that one of his employees had been seen with a suspected drug dealer. We do not believe this single event, when viewed in light of all the other circumstances in this case, is sufficient to overcome the evidence of Editor's actual malice.

Based upon our review of the record and taking the evidence in the light most favorable to Elder, we conclude that the statement at issue was defamatory and that Elder proved

its falsity. Further, Elder established the publisher's constitutional actual malice by clear and convincing evidence.[2]

## II.

 Publisher also argues the trial court erred in denying its motion for a new trial based upon the admission of certain testimony of Elder's wife, Maxine. Publisher argues the admission of evidence of possible ill will against Elder by Editor was irrelevant to the issue of constitutional actual malice and was highly prejudicial. We disagree.

 Admission of evidence is within the discretion of the trial judge. We will not reverse a jury verdict and grant a new trial unless the trial judge has abused that discretion and the admitted evidence was prejudicial. *Hanahan v. Simpson,* 326 S.C. 140, 155–56, 485 S.E.2d 903, 911 (1997); *Reiland v. Southland Equip. Serv., Inc.,* 330 S.C. 617, 634, 500 S.E.2d 145, 154 (Ct.App.1998).

During her direct testimony, Wife was asked about an encounter she had with Editor approximately one year prior to the publication of the defamatory item. She testified that when she went to the newspaper to check on some advertising for her husband's campaign for sheriff, Editor was very rude to her.

 As stated in Part I, above, evidence of Editor's possible ill will toward Elder has some relevance to his motive in publishing the column. Motive alone does not provide a sufficient basis for a finding of constitutional actual malice, but it can be a factor to be considered in the proof of the defendant's state of mind. *Harte–Hanks,* 491 U.S. at 666–68, 109 S.Ct. 2678. While a trial court should be cautious in admitting evidence of ill will in this type of case, we find no abuse of discretion here.

---

2. We note the trial judge correctly charged the jury regarding constitutional actual malice, so there was no confusion with the concept of common-law malice. *See Sanders v. Prince,* 304 S.C. 236, 240, 403 S.E.2d 640, 643 (1991).

### III.

■ The jury awarded $300,000 in punitive damages to Elder. Publisher contends the trial court erred in failing to grant its motion for a new trial because the award is grossly excessive and violates the due process guarantee of the Fourteenth Amendment.

■ When a verdict is so grossly excessive that it is shockingly disproportionate to the injuries and indicates the jury was moved by prejudice, passion, or caprice, it becomes the duty of the trial court and the appellate court to set it aside absolutely. A trial judge's refusal to grant a new trial absolute when the verdict is so grossly excessive is an abuse of discretion. *O'Neal v. Bowles,* 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993); *Allstate Ins. Co. v.. Durham,* 314 S.C. 529, 531, 431 S.E.2d 557, 558 (1993).

We do not think this verdict is grossly excessive. Chief Elder was a twenty-five year veteran of police work. According to law enforcement witnesses, Elder was a hard worker, had a good reputation, and was well respected. The Town Administrator testified Elder was hurt by the insinuation that he might take a bribe. Wife testified Elder was always proud to be police chief, devoted a lot of time to the job, and was no longer the aggressive person he was before the defamatory column was published. Elder testified he was upset by the column and believed his character had been damaged. When the column came out, people made comments concerning what he was doing with the money. He never knew if they believed the column or were just trying to be funny.

The South Carolina Supreme Court has noted that a person's reputation is invaluable. *Miller v. City of West Columbia,* 322 S.C. 224, 231, 471 S.E.2d 683, 687 (1996). Charges of bribery, particularly when made against public officials, are extremely damaging. Although measurement of damages to reputation is intangible, we find no abuse of discretion in the trial judge's denial of the motion for a new trial absolute.

■ Likewise, we do not find that the punitive damages award violates the Due Process Clause of the Fourteenth Amendment. As required, the trial judge conducted a post-trial review of the punitive damages award pursuant to *Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350 (1991). The judge found Editor's stated reason for believing Elder may be

taking a bribe was insufficient. The trial judge found the amount of the award would likely deter other such conduct, but it was not such an exorbitant amount that it would "muzzle" the press. Moreover, the trial judge found sufficient evidence of harm to Elder's impeccable reputation. Based upon his *Gamble* analysis, the trial judge found no due process violation. He noted the implication a public official was taking a bribe was one of the most damaging things that could be said about that official.

The amount of the punitive damage award is thirty times the actual damage award. We cannot say this ratio is unreasonable under the facts of this case. *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 18, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) ("We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case." (quoted in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 582, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996))); *Lister v. NationsBank of Del.,* 329 S.C. 133, 152, 494 S.E.2d 449, 459 (1997) (finding a ratio of 23.24 times the actual damage within the constitutionally accepted range).

Accordingly, we find no error in the trial or jury verdict. Therefore, the verdict is

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.