533 S.E.2d 899

**Wayne ELDER, Respondent,**

v.

**The GAFFNEY LEDGER, Petitioner.**

**No. 25153.**

Supreme Court of South Carolina.

Heard March 22, 2000.

Decided June 19, 2000.

Rehearing Denied July 20, 2000.

110

112

Jay Bender and Charles E. Baker, of Baker, Ravenel and Bender, of Columbia, for petitioner.

Patrick E. Knie, of Spartanburg, and Kenneth L. Holland, of Gaffney, for respondent.

WALLER, Justice:

We granted certiorari to review the Court of Appeals' opinion in *Elder v. Gaffney Ledger*, 333 S.C. 651, 511 S.E.2d 383 (Ct.App.1999). We reverse.

## FACTS

This is a defamation case. Respondent Wayne Elder, was Chief of Police for the town of Blacksburg.[1] On May 17, 1995, Petitioner, the Gaffney Ledger (Newspaper), printed the following in its "What's Your Beef?"[2] column:

### Are the drug dealers paying?

I'd like to know what the people think about this. The Chief of the Blacksburg Police Department knows that

---

1. He retired voluntarily in 1995 after twenty-five years of service.

2. "What's Your Beef?" is an opinion column in which readers are invited to telephone the newspaper and express their opinion or "tell [the paper] what [they] think" on an answering machine. Callers need not identify themselves.

these people are selling drugs and they have been selling them many years and he hasn't done anything about it. Now I often wonder if the drug dealers are paying the Chief of Blacksburg. And too, I would like to know why the Gaffney police have to go over there and work in the police department and do their work because they work here in Cherokee County. Don't they have enough money over there to hire Blacksburg police to do their jobs?

The editor of the paper, Cody Sossamon, made the decision to publish the above item which was phoned into the Newspaper by an anonymous caller. Although Sossamon wrote the caption, he testified he did not intend to suggest an answer to readers. However, Sossamon testified he himself believed drug dealers could be paying the chief.

After publication of the column, Elder brought this libel action. The jury awarded him $10,000 in actual damages and $300,000 in punitive damages. The Court of Appeals affirmed.

## ISSUE[3]

The sole issue we need address is whether there was sufficient evidence of constitutional actual malice to withstand Newspaper's motion for directed verdict.

## DISCUSSION

In defamation actions involving a "public official" or "public figure," the plaintiff must prove the statement was made with "actual malice," i.e., with either knowledge that it was false or reckless disregard for its truth. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). *See also Holtzscheiter v. Thomson News, Inc.,* 332 S.C. 502, 506 S.E.2d 497 (1998) (Toal, J., concurring). Whether the evidence is sufficient to support a finding of actual malice is a question of law. *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 685, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). When reviewing an actual

---

3. In light of our holding, we find it unnecessary to address Newspaper's contention that the phrase "Now I often wonder if the drug dealers are paying the Chief" is incapable of a defamatory meaning.

malice determination, this Court is obligated to independently examine the entire record to determine whether the evidence sufficiently supports a finding of actual malice. *Miller v. City of West Columbia,* 322 S.C. 224, 471 S.E.2d 683 (1996).

Actual malice is a subjective standard testing the publisher's good faith belief in the truth of his or her statements. *Peeler v. Spartan Radiocasting, Inc.,* 324 S.C. 261, 478 S.E.2d 282 (1996). The constitutional actual malice standard requires a public official to prove by clear and convincing evidence that the defamatory falsehood was made with the knowledge of its falsity or with reckless disregard for its truth. *New York Times Co. v. Sullivan, supra ; Botchie v. O'Dowd,* 315 S.C. 126, 432 S.E.2d 458 (1993). A "reckless disregard" for the truth, however, requires more than a departure from reasonably prudent conduct. "There must be sufficient evidence to permit the conclusion that the defendant **in fact entertained serious doubts as to the truth** of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) (emphasis supplied). There must be evidence the defendant had a **"high degree of awareness of . . . probable falsity."** *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) (emphasis supplied).

Failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard. *See St. Amant, supra; Hunt v. Liberty Lobby,* 720 F.2d 631, 642 (11th Cir.1983); *Schultz v. Newsweek, Inc.,* 668 F.2d 911, 918 (6th Cir.1982). Actual malice may be present, however, where one fails to investigate and there are obvious reasons to doubt the veracity of the informant. *St. Amant, supra.*

The actual malice standard is not satisfied merely through a showing of ill will or "malice" in the ordinary sense of the term. *Harte–Hanks,* 491 U.S. at 666, 109 S.Ct. 2678. It is insufficient to show the defendant made an editorial choice or simply failed to investigate or verify information; there must be evidence at least that the defendant purposefully avoided the truth. *Gaylord Broadcasting v. Francis,* 7 S.W.3d 279 (Tex.App.1999); *ABC, Inc. v. Gill,* 6 S.W.3d 19 (Tex.App.1999). Erasure of a tape recording when done as part of a routine practice is not evidence of actual malice.

*Peeler v. Spartan Radiocasting,* 324 S.C. 261, 478 S.E.2d 282 (1996). Although evidence concerning motive or care may bear some relation to the actual malice inquiry; however, "courts must be careful not to place too much reliance on such factors." *Harte–Hanks,* 491 U.S. at 668, 109 S.Ct. 2678.

The evidence relied upon in this case to demonstrate actual malice is as follows: 1) that Sossamon failed to investigate or verify the information left by the anonymous caller; 2) that the phone recording of the anonymous caller was "erased" by Newspaper; 3) that Sossamon pled guilty to manufacturing marijuana in 1991; and 4) that Sossamon had been "rude" to Chief Elder's wife on one occasion when she was at the Newspaper to place an ad for her husband. This evidence is patently insufficient to demonstrate Sossamon in fact entertained serious doubts as to the truth of the publication.[4]

As to the first item, the failure to investigate, while there was expert testimony that reporters verify the accuracy of news articles, and Sossamon testified he did not have sufficient evidence to develop a news story that Elder was being bribed, there was no testimony that the same verification procedures apply to editorials or opinion columns. In fact, the experts called by Elder did not write editorials. The only testimony with respect to columns such as "What's Your Beef?" came from Sossamon who testified that, although some newspapers have a policy against publishing anonymous items, he knew of a number which do, in fact, publish such items. Moreover, as noted previously, a mere failure to investigate is not tantamount to actual malice. *St. Amant, supra.* The fact that Sossamon did not investigate the anonymous phone call simply does not demonstrate that he "purposefully avoided" the truth.[5]

---

4. Elder also contends the fact that Newspaper failed to list Sossamon as a witness who could corroborate the truth of the statement in its answers to interrogatories constitutes evidence of constitutional actual malice. We fail to see how a party's failure to list a witness in answers to interrogatories demonstrates actual malice in the publication of the article. Moreover, Sossamon was listed as a witness in Newspapers' answers to interrogatories; he was simply not listed in response to interrogatory number 6.

5. The Court of Appeals made much of the fact that Sossamon conceded he did not have sufficient information to develop a news story. 511

■ The Court of Appeals also suggested that the failure of Newspaper to introduce the tape of the phone call was evidence of the possibility that Editor manufactured the entire piece. Contrary to the Court of Appeals' insinuation, there was simply no evidence that Sossamon fabricated the phone call, or that the tape was non-existent.[6] In relying upon the **absence** of the tape to establish evidence of Sossamon's possible motive, the Court of Appeals effectually switched the burden to Newspaper to introduce the recording. This was error. *See Tucker v. Reynolds,* 268 S.C. 330, 233 S.E.2d 402 (1977) (burden to prove his case is always on plaintiff). Given that counsel for Elder was in possession of a copy of the tape, and its authenticity was not an issue at trial, we find the Court of Appeals erred in relying upon its absence to demonstrate an inference of malice.[7]

■ The Court of Appeals also cited the fact that Sossamon had a 1991 conviction for manufacturing marijuana, concluding that he may have been motivated by his own problems with law enforcement to discredit Elder. In our view, the Court of Appeals placed undue emphasis on this conviction. There was no evidence Elder had anything whatsoever to do with Sossamon's arrest; on the contrary, it appears from the record that Sossamon was arrested by a Detective Burgess. Moreover, Sossamon repeatedly testified that he owed his life to the fact that he was arrested, and in fact had called and thanked the Sheriff who had arrested him. In sum, there was simply no testimony linking Sossamon's 1991 arrest to any ill motive toward Chief Elder such that its relevance in this case is questionable.

---

S.E.2d at 388. This is simply another way of stating he failed to investigate. The fact that he did not have enough information to transform an editorial/opinion column into a news story simply does not demonstrate he had substantial doubt as to its truth.

**6.** The message was left on what Sossamon described as a "computer recording." When Sossamon went to retrieve it for Elder the day following the publication, he was told it had been "killed" off the computer (or recorded over). Newspaper was subsequently able to retrieve the original message from a mirror recording, a copy of which was given to counsel for Elder prior to trial.

**7.** Moreover, this Court has recognized that erasure of a tape recording is not evidence of actual malice. *Peeler, supra.*

 With regard to Mrs. Elder's testimony that Sossamon was "rude" to her, although we agree with the Court of Appeals that evidence of ill will **may,** in some circumstances, be relevant to demonstrate motive, we fail to see the relevance of Mrs. Elder's testimony in this case. The mere fact that Sossamon spoke to her in a "very smart, rude" manner on one occasion more than a year prior to the publication of the column is simply irrelevant to demonstrate malice by Sossamon **toward Elder.** It is possible Sossamon is generally a rude person, or was in a bad mood on the day in question, or perhaps has a dislike of **Mrs. Elder.** Accordingly, we find Mrs. Elder's testimony irrelevant.

 Moreover, even if Sossamon's conviction and his "rudeness" toward Mrs. Elder are somehow relevant to a determination of "ill will" toward Chief Elder, they are insufficient to demonstrate the requisite constitutional actual malice in publishing the item. As noted by the United States Supreme Court, the actual malice standard is not satisfied merely through a showing of ill will or "malice" in the ordinary sense of the term. *Harte–Hanks, supra,* 491 U.S. at 666, 109 S.Ct. at 2685, n. 7 (phrase "actual malice" is unfortunately confusing in that it has nothing to do with bad motive or ill will). *See also Chapin v. Knight–Ridder,* 993 F.2d 1087, 1092, n. 5 (4th Cir.1993) ("actual malice" does not refer to "ill will"); *Sanders v. Prince,* 304 S.C. 236, 403 S.E.2d 640 (1991) (jury may not impose liability on basis of defendant's hatred, spite, ill will, or desire to injure as "[i]ll will toward the plaintiff, or bad motives, are not elements of the *New York Times* standard"); *Beckley Newspapers Corp. v. Hanks,* 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967). Although it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry, courts should be careful not to place too much reliance on such factors. *Harte–Hanks, supra.* "Bad motive or hostility is not what is meant by malice in the *New York Times* sense." *Pacella v. Milford Radio Corp.,* 18 Mass.App.Ct. 6, 462 N.E.2d 355, 361 (1984). Since evidence of ill will is not part of the actual-malice test, its admission could cause unnecessary jury confusion and arguably restrict the speech rights of adversaries without commensurate proof that the defendant knew or suspected a falsehood. *See Pendleton v. City of Haverhill,* 156 F.3d 57, 65

(1st Cir.1998) (affirming exclusion of evidence of libel defendant's animus toward plaintiff on the ground that "[i]n the defamation context, 'malice' does not relate to the defendant's motive for speaking or even to whether the defendant made the challenged statement out of ill will"). Even where such evidence is admitted (as, for example, to show that the defendant had a motive to lie about the plaintiff), it has been observed that it does not approach a showing of the mordant unconcern with the truth of a particular statement which is crucial to the claim of defamation by a public figure. *Nat'l Ass'n of Gov't Employees, Inc. v. Central Broadcasting Corp.,* 379 Mass. 220, 396 N.E.2d 996, 1003 (1979).

Under the facts of this case, even if we assume Sossamon's conviction and alleged "rudeness" tend to demonstrate that he in fact held some ill will toward Chief Elder, those factors far fall short of the requisite clear and convincing standard of demonstrating he deliberately published "What's Your Beef?" with a "high degree of awareness of . . . probable falsity." *Garrison v. Louisiana, supra.*

Finally, Sossamon testified that he believed the information contained in "What's Your Beef?" could be true because Chief Elder knew some people in Blacksburg who had been selling drugs for many years and had not done anything about it,[8] and because Elder had at one time called Sossamon to advise him that a Newspaper employee had been hanging out with a known drug dealer. Sossamon took the fact that Chief Elder had "tipped him off" as an indication that he "could have tipped anyone off." Given this is the only testimony regarding Sossamon's subjective belief concerning the publication, we simply cannot say he "purposefully avoided the truth" in printing the column.

## CONCLUSION

Essentially, the evidence of actual malice in this case boils down to Sossamon's failure to investigate an anonymous phone call prior to publishing it in a clearly designated editorial/opinion column,[9] and some speculative testimony that Sossamon

---

8. Elder essentially conceded this fact at trial.

9. The fact that the item was published in "What's Your Beef?" militates against a finding of actual malice. The column was clearly labeled as

could **possibly** have harbored some ill will toward Chief Elder. This is patently insufficient to establish clear and convincing evidence of constitutional actual malice. *Accord Journal Publishing Co. v. McCullough,* 743 So.2d 352 (Miss.1999) (evidence the defendant newspaper was opposed to plaintiff politically, had published unfavorable stories about him in the past, had been tipped off by the plaintiff's political enemy, newspaper reporter knew article would damage plaintiff's reputation, reporter did not verify information through at least two sources despite his knowledge it was good journalistic practice to do so, and there was evidence reporter had lied about trying to contact plaintiff's office before printing his story was insufficient to satisfy actual malice standard as it amounted to no more than evidence of ill will). Accordingly, we hold Elder failed to meet his burden of proof, and the Court of Appeals' opinion is therefore

**REVERSED.**

FINNEY, C.J., MOORE, and TOAL, JJ., concur.

BURNETT, J., dissenting in a separate opinion.

BURNETT, Justice (dissenting):

I respectfully dissent. In my opinion, Chief Elder presented clear and convincing evidence of Sossamon's actual malice in publishing the anonymous commentary in *The Gaffney Ledger.*

The constitutional standard for proving actual malice is well-established. In *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court held "[t]he constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false

---

an editorial/opinion column, and plainly advised readers they could call the newspaper and "get it off your chest" without leaving their name. The "form and content of the story are relevant not only to the falsity and neutral reportage questions, but also to the question of actual malice." *Harte–Hanks, supra,* 491 U.S. at 695, 109 S.Ct. 2678 (Blackmun, J., concurring).

or with reckless disregard of whether it was false or not." " 'Reckless disregard,' it is true, cannot be fully encompassed in one infallible definition. Inevitably its outer limits will be marked out through case-by-case adjudication, as is true with so many legal standards for judging concrete cases ...". *St. Amant v. Thompson,* 390 U.S. 727, 730–731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

"... [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *Id.* at 731, 88 S.Ct. 1323; *see also Peeler v. Spartan Radiocasting, Inc.,* 324 S.C. 261, 266, 478 S.E.2d 282, 284 (1996) ("[t]o establish recklessness, there must be an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers."). Nevertheless, "[t]he defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. *Professions of good faith will be unlikely to prove persuasive, for example, where a story is ... based wholly on an unverified anonymous telephone call ...". St. Amant,* 390 U.S. at 732, 88 S.Ct. 1323 (italic added).[1] When reporting the allegations of a third party, "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.*

On appeal, this Court has "a constitutional duty to 'exercise independent judgment and determine whether the record establishes actual malice with convincing clarity'." *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 659, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989), *citing Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 514, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *see also Peeler v. Spartan Radiocasting, Inc.,* 324 S.C. 261, 478 S.E.2d 282 (1996) (de novo review is conducted to determine if there is clear and convincing evidence on issue of actual malice). "Clear and convincing evidence is that degree of proof which

---

1. Our Court previously recognized this *St. Amant* standard in *Holtzscheiter v. Thomson Newspapers, Inc.,* 332 S.C. 502, 506 S.E.2d 497 (1998) (Toal, J., concurring).

will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established ...; it does not mean clear and unequivocal." *Id.* 324 S.C. at 265, 478 S.E.2d at 286, *citing Middleton v. Johnston,* 221 Va. 797, 273 S.E.2d 800, 803 (1981).

In my opinion, de novo review of the record demonstrates clear and convincing evidence of actual malice. Sossamon's claim he believed the anonymous recording was true because Chief Elder had previously notified him a newspaper employee was "hanging out" with a drug dealer who was going to be arrested does not support the recording's assertion Chief Elder was taking bribes from drug dealers. In fact, it suggests the contrary: that Chief Elder was actively arresting drug dealers. In that the United States Supreme Court has recognized the danger inherent in relying on anonymous sources, *St. Amant,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, Sossamon's failure to take *any* steps to corroborate the accuracy of the recording suggests a purposeful avoidance of the truth tantamount to reckless disregard for the truth. *Harte–Hanks,* 491 U.S. at 692, 109 S.Ct. 2678 ("[a]lthough failure to investigate will not alone support a finding of actual malice, purposeful avoidance of the truth is in a different category.") (internal citations omitted).

Moreover, Sossamon's attitude towards Chief Elder's wife prior to the publication of the recording indicates a degree of apparent hostility towards Chief Elder. Further, notwithstanding his claims to the contrary, Sossamon's own arrest and conviction for manufacturing marijuana are evidence of his motive for publishing the recording without regard to whether its assertions were true. *Id.* at 668, 109 S.Ct. 2678 (italic added) ("[a]lthough courts must be careful not to place too much reliance on such factors, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, and *it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry.*") (internal citations omitted).

The First Amendment prevents the threat of litigation from inhibiting the freedom of the press. Nonetheless, its protection is not without limit. Where, as here, a newspaper heedlessly and falsely accuses a public official of a crime solely

on an unsubstantiated anonymous recording, constitutional protections cease. Accordingly, I would affirm, in result, the decision of the Court of Appeals.[2]

---

2. Statements of opinion are not automatically entitled to constitutional protection. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (the First Amendment does not shield an assertion simply because it is characterized as an opinion). The phrase "[n]ow I often wonder if the drug dealers are paying the Chief of Blacksburg" is clearly an assertion of an objective fact and is actionable.