24432

Ralph MILLER, Respondent v. The CITY OF WEST COLUMBIA, G.F. Broom, Jr., City Administrator; P.K. O'Neill; H.C. Salters, Jr.; and Doris Davis, individually and in their representative capacities as officers and employees of the West Columbia Police Department, Defendants, of whom G.F. Broom, Jr., City Administrator; and Doris Davis, individually, and in her representative capacity, are Appellants.

(471 S.E. (2d) 683)

Supreme Court

*Vance J. Bettis* and *Stephan T. Savitz, Gignilliat, Savitz & Bettis,* Columbia, *for Respondent.*

*Arthur K. Aiken* and *Eric G. Fosmire, Collins & Lacy,* Columbia, *for Respondent.*

Heard Mar. 19, 1996.

Decided May 20, 1996; Reh. Den. June 20, 1996.

BURNETT, Justice:

Respondent Ralph Miller commenced this action alleging defamation, outrage or intentional infliction of emotional distress, and constructive wrongful discharge. The trial court denied Appellants' motions for judgment notwithstanding verdict (JNOV) and for a new trial, and declined to intervene with the award of damages against Broom. This appeal followed.

## FACTS

Doris Davis was a dispatcher at the West Columbia Police Department. On August 26, 1988, Davis telephoned G.F. Broom, Jr., City Administrator of West Columbia, and alleged that Ralph Miller, the Assistant Chief of Police of West Columbia, had sexually harassed her. Legal counsel advised Broom to investigate Davis' allegations by obtaining a written statement from her and polygraphing her. Broom was then advised to confront Miller with the allegations and polygraph him.

On August 31, 1988, Davis gave a sworn statement and was polygraphed. The polygraph examiner testified that Davis did not pass the polygraph examination. In fact, Davis received a score of minus nineteen—indicating attempted deception. However, the examiner further stated that victims will often show deception when tested. Therefore, because Davis was a victim, the examiner recommended that Miller be polygraphed as soon as possible.

On September 3, 1988, Broom and the Chief of Police of West Columbia, Vernon Boatwright, met with Miller and told him that Davis had made "unsubstantiated" sexual harassment allegations against him. Miller denied that he had made sexual advances toward Davis and agreed to take a polygraph examination.[1] Before the polygraph could be given, Miller experienced back problems which resulted in surgery and a subsequent extended recuperation period. During this time, Miller learned that Davis had failed the polygraph examination. On November 7, 1988, Miller informed Broom that he would return to work on a limited schedule, and before submitting to a polygraph examination, he wanted to know what questions would be asked and who would administer it.

When Miller returned to work on November 29, 1988, Broom along with Captain Salters and Sergeant Jones met with him and asked him whether he was prepared to take a polygraph. He responded that on the advice of his attorney he would take it at SLED, or if Frank Faulk administered it, or if he was given advance notice of who would administer it to verify their qualifications and reputation. As a result and in the presence of Salters and Jones, Broom declared that he had no choice but to conclude that Miller had sexually harassed Davis and had lied about it. Broom further explained that he was immediately suspending Miller and would recommend to the West Columbia City Council that he be terminated. The next day, *The State* newspaper printed an article regarding Miller's suspension. Two days later, Miller opted to retire effective December 31, 1988.

## ISSUES
Did the trial court err in:
  I. Refusing to grant Broom's JNOV motion?
  II. Denying Appellants' motion for a new trial?
  III. Failing to intervene with the award of damages against Broom?

---

[1] The record establishes that there was a strained working relationship among the employees at the police department. In fact, there appeared to be two factions—one aligned with Boatwright and the other aligned with Miller. Miller was very suspicious that those aligned with Boatwright were setting him up.

## DISCUSSION

### I. *JNOV Motion*

Broom contends that the trial court erred in denying his JNOV motion because Miller failed to satisfy the Constitutional actual malice standard. We disagree.

When reviewing an actual malice determination, the appellate court is obligated to independently examine the entire record to determine whether the evidence sufficiently supports a finding of actual malice. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed. (2d) 502 (1984). To recover on a claim for defamation, the Constitutional actual malice standard requires a public official to prove by clear and convincing evidence that the defamatory falsehood was made with the knowledge of its falsity or with reckless disregard for its truth. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. (2d) 686 (1964); *Botchie v. O'Dowd*, 315 S.C. 126, 432 S.E. (2d) 458 (1993); *Beckham v. Sun News*, 289 S.C. 28, 344 S.E. (2d) 603 (1986), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 646, 93 L.Ed. (2d) 702 (1986).

Here, the record establishes that Broom was investigating Davis' allegations that Miller had sexually harassed her. Broom first secured a written statement from Davis and then polygraphed her. The results of the polygraph examination revealed that her answers to the relevant questions indicated deception. Consequently, the examination results were not a basis upon which one could *conclude* that Miller had sexually harassed Davis.

Although Miller may have impeded the investigation by refusing to take a polygraph examination under Broom's conditions, this act did not give Broom justification to *conclude* that Miller had in fact sexually harassed Davis, or to defame him in the presence of Police Officers Salters and Jones. Instead, Broom could have suspended Miller pending further investigation into the matter. This is especially true when considering the fact that there was no evidence to confirm that Davis had complained to other individuals within the department concerning Miller's behavior or that Miller had made any off-color comments, innuendos or improprieties. Under these circumstances, Broom's conclusion that Miller had sexually harassed Davis was factually unsupported.

Nevertheless, to establish that the statement was made with reckless disregard for the truth, Miller must demonstrate that Broom in fact entertained serious doubts as to the truth of his statement. *See Botchie v. O'Dowd, supra;* Hubbard and Felix, *The South Carolina Law of Torts,* (1990). At trial, Broom stated, "I was uncertain about her allegations. I had no firm conclusions. I honestly did not know whom to believe." Clearly, this statement demonstrates that Broom had serious reservations about Davis' allegations. We therefore conclude that Broom's statement was made with reckless disregard for the truth.

After reviewing the record, we conclude that Broom uttered the defamatory statement with Constitutional actual malice and, therefore, the trial court did not err in denying his JNOV motion.

## II. *New Trial Motion*

Davis and Broom contend that the trial court erred in (1) allowing Officer Cochcroft to testify concerning his consensual sexual relationship with Davis while she was married, and (2) refusing to charge that an employee has the right to accept sexual comments and overtures from some employees and to reject them from other employees. As a result, they argue that the jury was permitted to conclude that because Davis had been sexually promiscuous with Cochcroft, she could not have been sexually harassed by Miller. They therefore maintain that the trial court erred in denying their new trial motion. We disagree.

After the trial court determined that the evidence regarding the Cochcroft-Davis relationship was inadmissible, counsel for Davis specifically asked Cochcroft whether Officer O'Neill had talked to him about "any other personnel matters." Counsel also asked Cochcroft if O'Neill had talked to him about *his* incident and this incident with Davis. From these inquiries, we conclude that the door to testimony regarding the Cochcroft-Davis relationship was opened by counsel for Davis during the cross-examination of Cochcroft.

Moreover, on several other occasions during trial the Cochcroft-Davis relationship was discussed without objection by O'Neill, Broom, and Davis. In fact, during the cross-examination of O'Neill the alleged objectionable tes-

timony was elicited by counsel for Appellants. One who purposefully elicits testimony on a particular subject without reserving his objections and receives the relevant response waives any alleged error. *Thomas-McCain, Inc. v. Siter*, 268 S.C. 193, 232 S.E. (2d) 728 (1977). Accordingly, by pursuing and developing evidence regarding the Cochcroft-Davis relationship, Appellants have waived any alleged error in its admission.

Next, to establish that the judge's refusal to give the requested charge deprived one of a fair trial, the refusal must have been both erroneous and prejudicial. *Orders Distributing Co., Inc. v. Newsome Carpets & Wallcovering*, 308 S.C. 429, 418 S.E. (2d) 550 (1992). The failure to give requested jury instructions is not prejudicial error when the given instructions set forth the proper test for determining the issues before the jury. *Id.*

The issue in this case was whether Davis' allegations were false, not whether Davis welcomed Miller's alleged actions, or whether employees in general have a right to consent to or reject sexual advances. The record establishes that the trial judge appropriately charged the law of defamation. In addition, the judge instructed them that state and federal law prohibit sexual harassment in the workplace, and that an employer has a duty to promptly investigate an employee's complaint of sexual harassment. We conclude that the given instructions set forth the appropriate test for determining the issue in this matter and, therefore, the refusal to charge Appellants request was neither erroneous nor prejudicial. Thus, the trial court did not err in denying Appellant's new trial motion.

### III. *Damages*

Brown alleges that the damage award in the amount of $250,000 actual and $500,000 punitive was grossly excessive and not founded on the evidence. Therefore, he argues that the trial court erred in denying his motion for a new trial. We disagree.

The award of actual and punitive damages remains within the discretion of the jury, as reviewed by the trial judge. *See Gamble v. Stevenson*, 305 S.C. 104, 406 S.E. (2d) 350 (1991); *Fennell v. Littlejohn*, 240 S.C. 189, 125

S.E. (2d) 408 (1962). Only when the trial court's discretion is abused, amounting to an error of law, does it become the duty of the appellate court to set aside the award. *Id.* Moreover, when considering whether or not the verdict is excessive, if there is substantial evidence to sustain the verdict, it will not be disturbed. The appellate court will intervene only where the verdict is so grossly excessive and the amount awarded is so shockingly disproportionate to the injuries to indicate that it was the result of caprice, passion, prejudice, or other considerations not found on the evidence. *Easler v. Hejaz Temple A.A.O.N.M.S. of Greenville,* 285 S.C. 348, 329 S.E. (2d) 753 (1985); *Brabham v. Southern Asphalt Haulers, Inc.,* 223 S.C. 421, 76 S.E. (2d) 301 (1953).

Broom's defamatory statement effectively destroyed Miller's reputation and ended his distinguished twenty-five-year law enforcement career. Miller had been the assistant chief of police for seventeen years, and during this time he had received the highest awards available to law enforcement officers. However, after resigning from the West Columbia Police Department, Miller had difficulty obtaining employment. When considering that a person's reputation is invaluable, we conclude that Broom has failed to establish that the verdict in this matter was grossly excessive. Therefore, the trial court did not err in denying Broom's motion for a new trial.

Broom next contends that the trial court erred in refusing to strike the punitive damage award because it violated public policy which requires employers to investigate allegations of sexual harassment and take prompt remedial action to end the harassment.

Broom was acting within the scope of his official duties when he investigated Davis' sexual harassment allegations. However, at the time the defamatory statement was made, Broom's conclusion was factually unsupported. It was not within his official duties nor did public policy require Broom as an employer to conclude without confirmation that Miller had sexually harassed Davis. Moreover, it was not within Broom's official duties to publish this conclusion knowing that it would defame Miller and would be republished.

Broom also alleges that the trial court erred in failing to strike the award of punitive damages pursuant to the review required by *Gamble v. Stevenson, supra,*

because the record did not establish that Broom had acted in a similar manner in the past or that he had an ability to pay. Under *Gamble,* the trial court is not required to make specific findings of fact for each factor. *McGee v. Bruce Hospital Systems,* 321 S.C. 340, 468 S.E. (2d) 633 (1996); *Weir v. Citicorp,* 312 S.C. 511, 435 S.E. (2d) 864 (1994). The *Gamble* review is required to ensure that an award of punitive damages is not so grossly disproportionate to the severity of the offense as to offend constitutional due process. Although the *Gamble* factors are relevant in assessing an award of punitive damages, specific factual findings concerning each factor is not required. Therefore, even if the record did not establish that Broom had acted in a similar manner in the past or that he had an ability to pay, the judge's findings on the remaining factors are sufficient to uphold the jury's award of punitive damages.

After careful review of the record, we conclude that not only did the trial judge appropriately charge the jury with the *Gamble* factors, but he also reviewed these factors during the posttrial motions hearing to ensure that the punitive damage award was appropriate and necessary. Thus, we hold that the trial court did not err in denying Broom's motion to strike the punitive damage award.

For the foregoing reasons, the decision of the trial court is

Affirmed.

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.