529 S.E.2d 721

**The STATE, Respondent,**

v.

**John Kennedy HUGHEY, Appellant.**

**No. 25096.**

Supreme Court of South Carolina.

Heard Oct. 20, 1999.

Decided March 27, 2000.

Rehearing Denied May 11, 2000.

442

444

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, of Columbia, Solicitor W. Townes Jones, IV, of Greenwood, all for respondent.

TOAL, Justice:

John Kennedy Hughey ("Hughey") seeks a reversal of his conviction and death sentence for the murders of Tesheka Lanyra Jackson ("Jackson") and Luevinia H. Harris ("Harris"). We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

On December 4, 1995, Hughey forcibly entered Harris's house and had an altercation with his former girlfriend, Jackson. While Hughey and Jackson were arguing, Harris was on the phone with her son, Marcus Harris, from Oklahoma City. Harris told her son to call the police because Hughey had a gun, so he immediately called 911. Harris also called the Abbeville City Police Department to request help. While Harris was on the phone with the dispatcher, Hughey shot both Harris and Jackson with a shotgun. Harris died from a solitary gunshot wound to the head. Jackson had three major injuries: (1) a gunshot wound to the back of her head, from a maximum shooting distance of two feet; (2) a large bruise on her face, likely caused by the blunt end of the shotgun; and (3) a stab wound in her chest.

Within thirty minutes of the shooting, Hughey stole Jackson's car and used her ATM card in Anderson. Hughey was arrested in Georgia and told the authorities "I killed them, it was an accident, the gun went off." Prior to the incident, Hughey left a note on his door that stated: "As of this morning I will be dead. Love you all. Please take care of my kids. John K."

After his arrest, Hughey gave an oral statement to Agent Eddie Clark. Hughey claimed he and Jackson had an altercation at Harris's house. According to Hughey, Jackson threw a vase at him and went outside to get a shotgun from her car. Harris tried to get between Hughey and Jackson, grabbed the gun, and the gun accidentally fired. According to Hughey, Jackson chased him into the bedroom, they struggled for the gun, and he accidentally shot her.

Hughey gave an inconsistent statement during the guilt phase of the trial. He denied making the statement to the police after his arrest. At trial, Hughey claimed Harris invited him in for coffee and Jackson attacked him with a vase and a knife. According to Hughey, Jackson charged him with a knife and he pushed her resulting in a stab. Hughey then ran out of the house to get the shotgun from the car. He claims that Jackson stood on the steps and threatened to kill him. As he approached her, Jackson spit on him and attempted to slam the door. While they struggled at the door, the gun went off and Harris was shot. Hughey admitted that he was angry and attempted to shoot at Jackson. He chased Jackson into the bedroom where he shot her in the back of the head with a twenty gauge shotgun.

On March 11, 1996, Hughey was indicted in Abbeville County for: (1) the murder of Jackson; (2) the murder of Harris; (3) burglary in the first degree; and (4) grand larceny of a vehicle. On October 27, 1997, the jury found Hughey guilty on all four counts. The jury found beyond a reasonable doubt the existence of all statutory aggravating circumstances and returned a recommendation of death for each count of murder. On October 30, 1997, the trial judge sentenced Hughey to: (1) death for each count of murder; (2) a life sentence for burglary in the first degree; and (3) ten years imprisonment for grand larceny.

Hughey appeals his death sentence for both murders, raising the following issues:

(1) Whether the trial judge erred by refusing to disqualify juror # 55, Brian Daly ("Daly"), since he was employed at the McCormick Correctional Institution, and S.C.Code Ann. § 24-3-930 (1989) provides that "[a]ll guards and officers employed at the Penitentiary shall

be exempted from serving on a jury", and whether Daly was the functional equivalent of a law enforcement officer?

(2) Whether the trial judge erred by refusing to provide specific examples of legal provocation in the jury charge of voluntary manslaughter?

(3) Whether the trial judge should have excluded the testimony of Mack Harris, the husband of Luevinia Harris, during the guilt phase concerning the blood he cleaned off the floor of his home after the murders?

(4) Whether the trial judge erred by refusing to charge the statutory mitigating circumstances contained in S.C.Code Ann. § 16–3–20(C)(b)(6) (Supp.1998), which allows the jury to consider: (1) the capacity of the defendant to appreciate the criminality of his conduct; or (2) the defendant's ability to conform his conduct to the requirements of the law?

(5) Whether the trial judge erred by allowing the victim impact witnesses to testify in narrative form, rather than question-answer format, and whether this format was beyond the permissible scope of *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)?

(6) Whether the trial judge erred by instructing the jury that a non-statutory circumstance was "one which the defendant contends serves the same purpose" as a statutory mitigating circumstance?

(7) Whether the trial judge erred in admitting State's Exhibit 95, a graphic color photograph of the victim's head wound?

## LAW/ANALYSIS

### I. JUROR DISQUALIFICATION

#### A. Exemption versus Disqualification

■ Hughey argues section 24–3–930 disqualifies a correctional officer from serving on a jury. We disagree.

■ South Carolina recognizes a difference between "exemptions" and "disqualifications" from jury duty. An exemp-

tion from jury duty is not a disqualification to act as a juror, but is a personal privilege that the juror may claim or waive. 50A C.J.S. *Juries* § 304 (1955); *see also* 15A Words and Phrases *Exempt; Exemption* (1950) ("A person exempted from jury services is not thereby disqualified to serve on a jury."). This Court has held an exemption from jury duty is not a disqualification. *See State v. Matthews*, 291 S.C. 339, 343, 353 S.E.2d 444, 447 (1986) ("An exemption under [S.C.Code Ann. § 14–7–850] is a privilege and not a disqualification."); *State v. Toland*, 36 S.C. 515, 521, 15 S.E. 599, 600 (1892) ("exemption was a personal privilege which [jurors] might or might not claim, but it did not disqualify them as jurors.").

S.C.Code Ann. § 24–3–930 (1976) provides "that all guards or keepers and other officers employed at the Penitentiary shall be *exempted* from serving on juries and from military or street duty." (emphasis added). In drafting this section, the South Carolina legislature chose the term "exempted." However, in other code sections relating to juror qualification, the legislature chose to use the term "disqualifications." *See, e.g.*, S.C.Code Ann. § 14–7–430 (1976) ("Persons drawn shall serve unless dead, *disqualified*, or removed from county"); S.C.Code Ann. § 14–7–820 (1976) ("*Disqualification* of county officers and court employees"). The use of these separate terms in different sections of the Code demonstrates the legislature's intent to draw a distinction between an exemption and a disqualification. Therefore, the trial judge did not err in ruling that section 24–3–930 did not disqualify juror Daly.

## B. Disqualification under S.C.Code § 14–7–820 (1976)

Hughey argues section 14–7–820 disqualifies a juror who considers himself to be a member of law enforcement. We disagree.

█ Section 14–7–820 provides "No clerk or deputy clerk of the court, constable, sheriff, probate judge, county commissioner, magistrate or other county officer or any person employed within the walls of any courthouse shall be eligible as a juryman in any civil or criminal case." "This court has adopted a functional rather than a rigid formalistic approach in interpreting and applying the provisions of this statute."

*State v. Cooper,* 291 S.C. 332, 334, 353 S.E.2d 441, 442 (1986). A juror's belief that he is the member of law enforcement is not enough to disqualify him under this statute.

■ This Court held in *State v. Johnson,* 123 S.C. 50, 115 S.E. 748 (1923) that a juror would be disqualified under section 14–7–820 when he or she was vested with like powers and duties of a law enforcement officer. In *Bryant v. State,* 264 S.C. 157, 213 S.E.2d 451 (1975), we held that a special deputy sheriff who did not perform the duties of a law enforcement officer was not disqualified under the statute. Daly is a corrections officer whose duties do not involve enforcing the criminal laws of this State. Hughey offers no evidence that Daly "was vested with like powers and duties of a ... sheriff," *Cooper,* 291 S.C. at 334–335, 353 S.E.2d at 442. Hughey only argues that Daly's ·questionnaire indicates he considered himself a member of law enforcement. In light of the fact that the voir dire of Daly reveals no bias, Mr. Daly's subjective view of his employment does not disqualify him under section 14–7–820. Furthermore, section 24–3–930, discussed *supra,* speaks to the eligibility of an officer or guard employed by the penitentiary for jury duty. Therefore, section 24–3–930, not section 14–7–820, governs the eligibility of a corrections officer for jury duty.

## II. Legal Provocation

■ Hughey argues the trial judge erred by refusing to provide specific factual examples of legal provocation in the voluntary manslaughter charge. We disagree.

■ The trial judge is required to charge only the current and correct law of South Carolina. *Cohens v. Atkins,* 333 S.C. 345, 509 S.E.2d 286 (Ct.App.1998). The substance of the law must be charged to the jury, not particular verbiage. *Keaton v. Greenville Hosp. Sys.,* 334 S.C. 488, 514 S.E.2d 570 (1999). A jury charge is correct if when the charge is read as a whole, it contains the correct definition and adequately covers the law. *Id.* at 495–96, 514 S.E.2d at 574. To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial. *Ellison v. Parts Distributors, Inc.,* 302 S.C. 299, 395 S.E.2d 740 (Ct.App.1990).

 The trial judge's jury charge in the instant case is not reversible error because it adequately expressed the current South Carolina law of voluntary manslaughter. "Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Johnson*, 333 S.C. 62, 508 S.E.2d 29 (1998). Both heat of passion and sufficient legal provocation must be present at the time of the killing to constitute voluntary manslaughter. *State v. Walker*, 324 S.C. 257, 478 S.E.2d 280 (1996) (citations omitted). The jury charge used in this case adequately expressed the current law of voluntary manslaughter by incorporating the exact language used by this Court in *State v. Walker* to define "sudden heat of passion." *See Walker*, 324 S.C. at 257, 478 S.E.2d at 281. The trial judge gave the instruction as follows:

Sudden heat of passion aroused by sufficient legal provocation which may reduce a felonious killing from that of murder to that of manslaughter need not dethrone reason entirely or shut out knowledge and volition, but it refers to an unlawful killing provoked by such circumstances that would naturally disturb the sway of reason and render the mind of an ordinary, reasonable, and prudent person incapable of cool reflection. And to produce what, according to human experience may be called an uncontrollable impulse to do violence.

Now in order for a felonious killing to be reduced from that of murder to that of manslaughter it must have occurred in sudden heat of passion aroused by sufficient legal provocation. The killing of a human being, even in the heat of passion, is murder if there was no sufficient legal provocation. That is the slayer had no reasonable cause for his anger.

Now in connection with what I have just instructed you regarding a cool reflection, that is whether or not a reasonable time for cooling off had elapsed, you should consider the whole circumstances surrounding the event. You should consider the nature of the provocation, should you find some to exist, the defendant's mental and physical constitution as well as the circumstances and relationships between the parties, the time in which an ordinary person under like

circumstances would have called—cooled off is considered to be the reasonable time.

Even when a person's passion were sufficiently aroused by a legally adequate provocation, if at the time of the killing those passions had cooled or a sufficiently reasonable time had elapsed so that the passions of the ordinary reasonable person would have cooled, the killing would be murder and not manslaughter.

The trial judge's refusal to include the specific instructions requested by Hughey does not constitute reversible error. A trial judge's refusal to provide specific jury instructions is not reversible error if the general instructions are sufficiently broad to enable the jury to understand the law and the issues involved. *Cohens,* 333 S.C. at 345, 509 S.E.2d at 289. The failure to provide specific jury instructions is not error when the given instructions use the proper test for determining the issues before the jury. *Miller v. City of West Columbia,* 322 S.C. 224, 471 S.E.2d 683 (1996).

Hughey requested that specific examples of legal provocation be provided to the jury. Specifically, Hughey requested the following examples of legal provocation: pulling a knife on a defendant, pointing a gun at a defendant, spitting in a defendant's face, assault of a family member, sudden mutual combat where one of the participants is killed by the other without a previously informed intention to do so, finding one's spouse in the act of adultery, or the deceased having molested a defendant's minor child. The requested examples constitute a direct charge on the facts because Hughey alleges that a knife was pulled on him, Jackson spit in his face, and there was sudden mutual combat. The requested jury charge elevates the specific facts of the case, such as spitting in a person's face, to an acceptable act of legal provocation. Because the requested charge is an instruction on the facts, and the requested charge is fully and fairly covered by the trial judge's general charge, refusal of the requested instruction is not reversible error. *See State v. Barwick,* 280 S.C. 45, 310 S.E.2d 428 (1983).

### III. PREJUDICIAL TESTIMONY

Hughey argues the trial judge erred in overruling their objection to a portion of George Harris's testimony. We disagree.

At trial, defense counsel objected to the following testimony by George Mack Harris, husband of one of the victims:

**Question:** When you got back in that house, did you notice any red colored substance on the floor of your kitchen?

**Mr. Garrett:** Objection, Your Honor, **relevance?**

**The Court:** Overruled.

**The Witness:** When I got back in my house I cleaned that blood up, I (witness is crying) me and another friend. I removed all that blood. There was blood on the floor, blood down the hall in that door into that back bedroom, there was blood and fragments of bone on that floor. The police officers told me—

**Mr. Garrett:** Objection, Your Honor. As to what the police officers said.

**Mr. Jones:** Don't tell me what they told you, just tell me—

**The Court:** The question is simply if you saw that on the floor or if it was there before you left?

**Question:** Was it on the floor before you left at 10:50?

**Answer:** No sir.

**Question:** Was it there when you came back?

**Answer:** Yes, it was.

 Defense counsel objected to Mr. Harris's testimony on the grounds of relevance. The trial judge has considerable discretion in ruling on the admissibility of testimonial and non-testimonial evidence. *See State v. Davis,* 309 S.C. 326, 422 S.E.2d 133 (1992), *overruled on other grounds, Brightman v. State,* 336 S.C. 348, 520 S.E.2d 614 (1999); *State v. Sims,* 304 S.C. 409, 405 S.E.2d 377 (1991). The trial judge's determination of admissibility will not be disturbed absent abuse of discretion resulting in prejudice to the complaining party. *See, e.g., State v. Babb,* 299 S.C. 451, 385 S.E.2d 827 (1989).

 "Evidence is relevant if it tends to establish or makes more or less probable some matter in issue upon which it directly or indirectly bears." *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146, 148 (1991). The State argues the testimony is relevant to the timing of the murder because it establishes that the murder occurred during the period of time Mr. Harris was absent from his home. Even if we find the testimony was irrelevant, and the trial judge abused his discretion by admit-

ting the testimony, the statements by Mr. Harris did not result in unfair prejudice, and therefore, any error by the trial judge was harmless. *State v. Johnson*, 306 S.C. 119, 410 S.E.2d 547 (1991) (wife's testimony was not relevant, but admission was a harmless error).

Although Mr. Harris's testimony may have been of little probative value, in light of the evidence already presented by the State, its admission did not result in prejudice to the Appellant. In *State v. Davis, supra*, this Court upheld the admission of testimony by the victim's mother where the testimony was of little probative value but concerned facts already known to the jury. The testimony by Mr. Harris in the instant case did not contain any evidence that was not described, rather graphically, by the police, the pathologist, and a SLED agent. This Court concluded in *Davis* that although the testimony by the victim's mother was of little probative value, the testimony did not prejudice the defendant to the extent of affecting the outcome of the trial. *Davis*, 309 S.C. at 340, 422 S.E.2d at 142.

Therefore, even if the testimony of Mr. Harris was irrelevant and inadmissible, because the questionable testimony was brief and no new evidence was presented, the admission constituted a harmless error.

## IV. STATUTORY MITIGATING CIRCUMSTANCES

Hughey argues the trial judge erred by refusing to instruct the jury on the statutory mitigating circumstance contained in S.C.Code Ann. § 16–3–20(C)(b)(6) (Supp.1998), which would allow the jury to consider Hughey's capacity to appreciate the criminality of his conduct, or his ability to conform his conduct to the requirements of the law. We disagree.

Section 16–3–20(C)(b)(6) authorizes the trial judge to instruct the jury on certain statutory mitigating circumstances that may be supported by evidence. Specifically, section 16–30–20(C)(b)(6) states that the jury may consider "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." The trial judge has a duty to review all statutory mitigating circumstances and instruct the jury as to any circumstances which may be supported by

the evidence and not merely those requested by the defendant. *State v. Caldwell,* 300 S.C. 494, 388 S.E.2d 816 (1990) (citing *State v. Bellamy,* 293 S.C. 103, 359 S.E.2d 63 (1987)). In deciding which statutory mitigating circumstances may be supported, the trial judge is concerned only with the existence of the evidence, not its weight. *Id.*

 Hughey argues the trial judge should have instructed the jury to consider the statutory mitigating circumstances contained in section 16–3–20(C)(b)(6) based on the following testimony provided by Dr. James Evans, a specialist in neuropsychology:

**Question:** You're offering them as explanations for his individual characteristics.

**Answer:** Yes, in a way I'm offering them as fact the [sic] would appear to modify or mitigate or whatever the crime—it would—it wasn't—it might be something that— He's different from the average person in many ways. And those are the ways we've talked about now. And those certainly there is question whether they were factors—it needs to be asked are those factors in the crime. And they may well have been.

**Question:** In your opinion, they could definitely have impacted him on December 4, 1995?

**Answer:** They could have been factors, yes.

**Question:** And, Doctor, in your medical opinion as neuropsychologist, if an individual who suffers from organic brain dysfunction is exposed to violence at an early age, abused, and then suffers a series of head traumas, in you opinion as an expert, *would those factors affect that person's ability to cope and deal with stress and life itself?*

**Answer:** Yes.

**Question:** And, Doctor, in your evaluation and study of John Kennedy Hughey, have you found organic brain dysfunction?

**Answer:** I found a lot of converging evidence for organic brain dysfunction to the point I would say, yes, it exists.

Dr. Evan's testimony implies that Hughey could not deal with stress, not that Hughey would be unable to appreciate the

criminality of his conduct or to conform his conduct to the law. In fact, no witness testified that Hughey could not appreciate the criminality of his conduct.

In *State v. Caldwell,* this Court held the trial judge erred by failing to charge the statutory mitigating circumstances contained in section 16–3–20(C)(b)(6) where the defendant suffered from a psychopathic personality. *Caldwell,* 300 S.C. at 506, 388 S.E.2d at 823. This condition is "one in which the individual is not constrained by societal norms for behavior and therefore is unlikely to obey rules on his own." *Id.* The trial judge in *Caldwell* should have charged section 16–3–20(C)(b)(6) because the defendant's disorder caused him to be unable to appreciate the criminality of his behavior or abide by the law. Unlike *Caldwell,* there is no evidence in the instant case that Hughey's disorder caused him to be unable to understand the criminality of his conduct, only that he was more susceptible to stress.

Hughey argues that he was entitled to an instruction on the mitigating circumstances in section 16–3–20(C)(b)(6) because of his abuse as a child, several head traumas, a car accident, and the death of his mother. The trial judge adequately submitted the issue of Hughey's mental well-being to the jury by instructing the jury to consider as non-statutory mitigation, "his level of intellectual function whether as a natural consequence of his birth or as a result of physical and/or emotional trauma suffered as a child or as an adult." *See State v. Plemmons,* 296 S.C. 76, 370 S.E.2d 871 (1988) (trial judge was not required to charge section 16–3–20(C)(b)(6) because of the effects of alcohol on the defendant where the non-statutory mitigating circumstances charge specifically permitted the jury to consider the effects of intoxication).

The trial judge in the present case did not err by refusing to charge the statutory mitigating circumstances contained in section 16–3–20(C)(b)(6) because no evidence introduced supported it and the jury was advised to consider Hughey's mental state through the judge's non-statutory mitigating circumstances charge.

## V. Victim Impact Testimony

■ Hughey argues the trial judge improperly allowed the State's victim impact witnesses to testify in narrative form rather than question-answer format in violation of *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).[1] We disagree.

■ Victim impact evidence is admissible in the sentencing phase to demonstrate the "uniqueness" of the victim and the specific harm committed by the defendant. *State v. Rocheville*, 310 S.C. 20, 27, 425 S.E.2d 32, 36 (1993). In *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court held that victim impact evidence is relevant for a jury to meaningfully assess the defendant's moral culpability and blameworthiness and is only inadmissible where it is so unduly prejudicial that it renders the trial fundamentally unfair. *See also State v. Johnson*, 306 S.C. 119, 410 S.E.2d 547 (1991). The State called four members of Harris's family to describe their personal relationship with Harris and the unique impact her death had on their lives. The solicitor asked each family member one open-ended question that elicited a long, narrative response describing their relationship with the victim. Although given in narrative form, the testimony was routine victim impact testimony that did not evoke any prejudicial comments.[2] The witnesses' testimony was relevant and proper because it portrayed Harris as an unique individual and it demonstrated the specific harm caused by Hughey's actions.[3]

---

1. Defense counsel adequately preserved this issue for appeal by objecting to the family members "continuing without questions."

2. The family members testified that Harris was a good mother, they missed her company, they missed her cooking, and that the holidays were going to be painful without her.

3. The family members' testimony in this case is similar to other victim impact testimony permitted by this Court. *See State v. Ivey*, 325 S.C. 137, 481 S.E.2d 125 (1997) (admitting testimony from victim's mother concerning the impact of her son's death); *Riddle v. State*, 314 S.C. 1, 443 S.E.2d 557 (1994) (admitting testimony of victim's stepdaughter concerning the victim's standing in the community, the victim's grandchildren, and the impact the crime had on her); *State v. Rocheville*, 310 S.C. 20, 425 S.E.2d 32 (1993) (admitting testimony of victim's parents

## VI. NON-STATUTORY MITIGATING CIRCUMSTANCES

Hughey argues the trial judge's instruction on non-statutory mitigating circumstances constituted reversible error. We disagree.

■■■■■■ A jury instruction must be viewed in the context of the overall charge. *See State v. Hicks*, 330 S.C. 207, 499 S.E.2d 209 (1998) (citing *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368). The test for the sufficiency of a jury charge is what a reasonable juror would have understood the charge to mean. *Id.* at 218, 499 S.E.2d at 215. Hughey argues the jury charge was confusing to a reasonable juror because it implies that non-statutory mitigating circumstances are not circumstances the law *requires* a jury to consider. The trial judge gave the following instruction on non-statutory mitigating circumstances:

Now you are also permitted under the law to consider ... you should consider, any non-statutory mitigating circumstances which have been shown to exist by the evidence in the case.

A non-statutory mitigating circumstance is one which is not provided for by statute, but is one which the defendant contends serves the same purpose. That is to lessen or reduce the degree of the defendant's guilt in the commission of the crime of murder.

Those that the defense contends should be considered are: any prior good acts of the defendant, the defendant's level of intellectual functioning whether as a natural consequence of his birth or as a result of physical and/or emotional trauma suffered as a child or as an adult, and any other evidence relating to a mitigating circumstance which you find to be appropriate and which you find to have been established by the evidence in this case.

Now while there must be some evidence which supports a finding by you of the existence of one or more statutory or non-statutory mitigating circumstances, it is not necessary that you find the existence or a circumstance or circumstances beyond a reasonable doubt. *And you may recom-*

---

who testified about their families' reliance on their son's dreams and aspirations).

*mend a sentence of life imprisonment and [sic] whether or not you find the existence of a statutory or nonstatutory mitigating circumstance.*

In making your determination as to which sentence to recommend in these cases, you should consider the statutory aggravating circumstances, the statutory mitigating circumstances, and *any non-statutory mitigating* circumstances in arriving at your decision. . . .

Simply stated, you may recommend a sentence of life imprisonment for *any reason or for no reason at all* other than as an act of mercy. (emphasis added).

Considering the jury charge as whole, a reasonable juror would understand that either a statutory or a non-statutory jury circumstance could reduce the sentence to life imprisonment. Hughey contends the trial judge's instruction was erroneous because the charge defined non-statutory circumstances as those "the defendant contends" the jury should consider, not what the law *authorizes* the jury to consider. The jury charge adequately apprised the jury of the function of non-statutory mitigating circumstances because it repeatedly emphasized that both statutory and non-statutory circumstances should be considered when forming a recommendation. In fact, the judge instructed the jury that they could recommend life imprisonment for "any reason or no reason at all." *See State v. Atkins,* 303 S.C. 214, 399 S.E.2d 760 (1990) (upholding a jury charge where the judge stressed the jury could recommend a life sentence "for any reason or no reason").

Moreover, the jury charge in the present case is similar to other charges of non-statutory mitigating circumstances upheld by this Court. The jury charge authorized the jury to recommend life imprisonment even if they did not find the existence of mitigating circumstances. Similar jury instructions have been found adequate by this Court. *See State v. Hicks,* 330 S.C. 207, 499 S.E.2d 209 (1998) (upholding a jury charge which permitted a jury to impose a life sentence even if they did not find mitigating circumstances); *State v. Sims,* 304 S.C. 409, 405 S.E.2d 377 (1991) (jury charge was found proper where it authorized jury to consider any mitigating evidence presented); *State v. Singleton,* 284 S.C. 388, 326 S.E.2d 153

(1985) (instruction proper where judge states the jury may consider "any mitigating circumstances ... which are supported by evidence."). Furthermore, the trial judge went beyond the basic jury charge on non-statutory mitigating circumstances by providing specific factual examples of non-statutory mitigating circumstances, such as the defendant's prior good acts and level of intellectual functioning.

■ Hughey contends the jury instruction was confusing because it suggested that an act of mercy would have been an invalid reason for a life vote. The trial judge told the jurors "you may recommend a sentence of life imprisonment for any reason or no reason at all other than as an act of *mercy.*" (emphasis added). This argument is without merit because a judge's charge that the jury should not be guided by sympathy, prejudice, passion, or public opinion is not reversible error. *See Singleton,* 284 S.C. at 393, 326 S.E.2d at 156; *State v. Chaffee,* 285 S.C. 21, 328 S.E.2d 464 (1984).

The jury charge, reviewed in its entirety, is not confusing because it advises the jurors to consider all mitigating circumstance in making their recommendation. The non-statutory circumstances are repeatedly emphasized by the trial judge and are adequately defined according to current South Carolina case law.

## VII. PHOTOGRAPH

■ Hughey argues the trial judge erred in admitting State's Exhibit 95, a graphic color photograph of Jackson's head wound, because the photograph was so inflammatory that it denied his right to a fair sentencing hearing. We disagree.

■ The relevancy, materiality, and admissibility of photographs are matters left to the sound discretion of the trial judge and those rulings will not be disturbed absent a showing of an abuse of discretion. *State v. Nance,* 320 S.C. 501, 466 S.E.2d 349 (1996); *State v. Kornahrens,* 290 S.C. 281, 350 S.E.2d 180 (1986). The trial judge must balance the prejudicial effect of graphic photographs against their probative value. To constitute unfair prejudice, the photographs must create a "tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one."

*State v. Franklin,* 318 S.C. 47, 55, 456 S.E.2d 357, 361 (1995). Photographs which are calculated to arouse the sympathies or prejudices of the jury should be excluded from the guilt phase of a capital case if they are irrelevant or not substantially necessary to show material facts or conditions. *Kornahrens,* 290 S.C. at 288, 350 S.E.2d at 185.

 In the sentencing phase, the scope of the probative value of evidence is much broader. *State v. Rosemond,* 335 S.C. 593, 518 S.E.2d 588 (1999). "The purpose of the bifurcated proceeding in a capital case is to permit the introduction of evidence in the sentencing proceeding which ordinarily would be inadmissible in the guilt phase." *Id.* During the sentencing phase, the trial judge may permit the introduction of additional evidence of aggravation in order to aid the jury in determining whether to recommend a death sentence. *Id.* Photographs of a victim's body in the sentencing phase are admissible to demonstrate: (1) the circumstances of the crime; and (2) the character of the defendant. *State v. Tucker,* 324 S.C. 155, 168, 478 S.E.2d 260, 267 (1996).

During the sentencing phase the State introduced a graphic photograph of the victim's face after she was shot in the back of the head with a twenty gauge shotgun. Although the photograph is gruesome, it depicts the condition in which Hughey left the victim and the circumstances of the crime. The photograph is probative of the circumstances of the crime because it demonstrates the shot was intentional rather than accidental. The defense argued in the guilt phase that the gun accidently fired when Hughey and Jackson were struggling over the gun. The photograph demonstrates that Jackson was shot deliberately from behind, in a manner in which she was least able to defend herself, and not as a result of a struggle over the gun. The photograph also demonstrates that Hughey shot Jackson at a very close range. *See Rosemond,* 335 S.C. 593, 518 S.E.2d 588 (admitting a photograph of a victim who was shot twice in the head in order to demonstrate the wounds were inflicted at close range); *State v. Nichols,* 325 S.C. 111, 481 S.E.2d 118 (1997) (admitting photograph of victim's face because it demonstrated the angle and distance from which the victim was shot); *Tucker,* 324 S.C. at 155, 478 S.E.2d at 267 (admitting photographs of victim's head to demonstrate the shots were fired at close range). More-

over, this Court has not found an abuse of discretion in the admission of graphic photographs similar to the photographs in the present case. *See State v. Gardner,* 332 S.C. 389, 505 S.E.2d 338 (1998) (admitting a close-up color photograph of the victim's face in the sentencing phase of the trial where she had been shot in the face five times).

## CONCLUSION

After reviewing the entire record, we conclude the death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jury's finding of statutory aggravating circumstances is supported by the evidence. *See* S.C.Code Ann. § 16–3–25 (1985). Further, the death penalty is neither excessive nor disproportionate to that imposed in similar cases. *See State v. Powers,* 331 S.C. 37, 501 S.E.2d 116 (1998), *cert. denied,* 525 U.S. 1043, 119 S.Ct. 597, 142 L.Ed.2d 539 (1998); *State v. Byram,* 326 S.C. 107, 485 S.E.2d 360 (1997); *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996), *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 708 (1997); *State v. Green,* 301 S.C. 347, 392 S.E.2d 157 (1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990); *State v. Lucas,* 285 S.C. 37, 328 S.E.2d 63 (1985), *cert. denied,* 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 729 (1985). Based on the foregoing, the convictions and sentences are **AFFIRMED.**

MOORE, WALLER, and BURNETT, JJ., concur.

FINNEY, C.J., dissenting in a separate opinion.

FINNEY, Chief Justice:

I respectfully dissent. In my opinion, the testimony from the neuropsychologist coupled with the evidence of appellant's head traumas and his car accident constitute some evidence warranting a charge on the statutory mitigating circumstance of capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. *State v. Caldwell,* 300 S.C. 494, 388 S.E.2d 816 (1990). Accordingly, I would reverse and remand for resentencing.